IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TALON'S VILLAGE, LLC,

   *Plaintiff*,

   v.

SOMERSET COUNTY SANITARY
DISTRICT, INC.,

   *Defendant*.

Civil No. ELH-15-3298

\* \* \* \*

GO-GETTERS, INC.,

   *Plaintiff*,

   v.

SOMERSET COUNTY SANITARY
DISTRICT, INC.,

   *Defendant*.

Civil No. ELH-15-3299

**MEMORANDUM OPINION**

In this Memorandum Opinion, I consider motions to remand in two similar cases, each raising constitutional challenges to front-foot benefit assessments imposed by a municipal corporation that operates public water and sewer systems in Somerset County, Maryland.

On September 30, 2015, Go-Getters, Inc. ("Go-Getters"), plaintiff, filed suit in the Circuit Court for Somerset County against Somerset County Sanitary District, Inc. (the "District"). ELH-15-3299 (sometimes referred to here as "Case 1"), ECF 1 ¶ 1. *See* ECF 2, Complaint; *see also* ECF 1 ¶ 1, Notice of Removal. A few days later, on October 6, 2015, Talon's Village, LLC ("Talon's Village"), plaintiff, also filed suit in the Circuit Court for Somerset County against the

District.  ELH-15-3298 (sometimes referred to here as "Case 2").  *See* ECF 2, Complaint; *see also* ECF 1 ¶ 1, Notice of Removal.  Go-Getters and Talon's Village, who are represented by the same counsel, each own real property in Princess Anne, Maryland, for which the District operates and maintains the public water and sewer systems.  *See* ELH-15-3298, ECF 2 ¶¶ 2-5, Complaint; ELH-15-3299, ECF 2 ¶¶ 2-4, Complaint.  Both suits request declaratory and injunctive relief, and seek to resolve "the constitutionality and legality" of front-foot benefit assessments[1] that the District "has imposed and continues to impose" on plaintiffs' property to pay for water and sewer "infrastructure improvements."  Case 2, ECF 2 ¶ 1; *see also* Case 1, ECF 2 ¶ 1.  Plaintiffs explain that a front-foot benefit assessment is a charge levied based on a property's frontage to a portion of the sewer system.  *See* Case 1, ECF 2 ¶ 38; Case 2, ECF 2 ¶¶ 38, 41.

On October 29, 2015, the District removed both cases, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1441.  Case 1 and Case 2, ECF 1, Notice of Removal.  On November 13, 2015, Go-Getters filed a Motion to Remand (ECF 11), accompanied by a legal memorandum (ECF 11-1).  On November 17, 2015, Talon's Village also filed a Motion to Remand (ECF 12), supported by a legal memorandum (ECF 12-1) (collectively, the "Motions").  In the Motions, plaintiffs argue that "this Court is barred from exercising jurisdiction by the Tax Injunction Act, 28 U.S.C. § 1341."  ELH-15-3298, ECF 12 at 1; ELH-15-3299, ECF 11 at 1.  The District opposes the Motions (ECF 13), and has submitted legal memoranda (Case 1 and

---

[1] The parties use alternative spellings:  "front-foot" and "front foot."

Case 2 ECF 13-1) (collectively, "Opposition").   Go-Getters and Talon's Village have each

replied.  ELH-15-3298, ECF 16; ELH-15-3299, ECF 14 (collectively, "Reply").[2]

The Motions have been fully briefed and no hearing is necessary to resolve them.  *See*

Local Rule 105.6.  As the Motions raise substantially identical questions of law and fact and the

parties' submissions are largely identical, I shall resolve both Motions in this Memorandum

Opinion.  For the reasons that follow, I will GRANT the Motions.

## I.    Factual and Procedural Background[3]

The District is "a Maryland public corporation formed by the County Commissioners of

Somerset County," pursuant to the Environment Article of the Maryland Code (the "Sanitary

District Law").  ELH-15-3298, ECF 2 ¶ 4; ELH-15-3299, ECF 2 ¶ 3.  "The Sanitary District Law

authorizes the District to acquire, construct, operate and maintain public water and sewerage

systems and in doing so to borrow funds to finance construction of [water and sewer] systems

and, *inter alia*, to impose front-foot benefit assessments . . . on certain properties by which to

obtain funds to pay back the borrowed money."  Case 1, ECF 2 ¶ 4; Case 2, ECF 2 ¶ 5.  "The

District has established various service areas designated 'subdistricts' in which it furnishes

public water and/or sewerage service, including the 'Princess Anne/Westover Subdistrict,' which

---

[2] On November 5, 2015, the District filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Case 1 and Case 2, ECF 7), accompanied by a legal memorandum (ECF 7-1) (collectively, "Motions to Dismiss") and two exhibits (ECF 7-2 & ECF 7-3).  Go-Getters and Talon's Village oppose the Motion to Dismiss.  ELH-15-3298, ECF 14; ELH-15-3299, ECF 15.  The District has replied. ELH-15-3298, ECF 19; ELH-15-3299, ECF 18.  The Motions to Dismiss are not addressed in this Memorandum Opinion; they may be addressed on remand.

[3] The District states in its Opposition (Case 1 and Case 2, ECF 13-1 n.1): "For purposes of this Memorandum, Defendant incorporates all facts set forth in Defendant's Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. (*See* ECF Doc. 7-1)."  Accordingly, I have also considered those factual allegations.

contains about two square miles located in the corporate limits of Princess Anne and its environs

. . . ." ELH-15-3298, ECF 2 ¶ 7; ELH-15-3299, ECF 2 ¶ 6.  Go-Getters and Talon's Village each

own real property within the Princess Anne/Westover Subdistrict (the "Subdistrict").  *Id.*

Beginning as early as 2001, the District began to encounter problems with its sewer

system.  Case 1 and Case 2, ECF 2 ¶ 11.  Plaintiffs assert: "By 2004, the volume of sewage being

discharged into the gravity system . . . exceeded the capacity of that system, and from time to

time backups and overflow discharges of raw (untreated) sewage from the system occurred."

Case 1 and Case 2, ECF 2 ¶ 10.  On the advice of engineering consultants, the District improved

its sewer infrastructure.  *Id.* ¶¶ 12-16.  These improvements included upgraded water treatment

pump equipment and a two-mile-long "bypass force main" (the "Bypass Project").[4]  *Id.* ¶¶ 23-24.

The District began and completed the Bypass Project in 2007.  *Id.* ¶ 22.

The District financed the Bypass Project through a $3.2 million loan from the United

States Department of Agriculture ("USDA").   Case 1 and Case 2, ECF 2 ¶ 29.   Plaintiffs

maintain that the District also used proceeds from the USDA loan "to pay for the cost of a new

water main or other infrastructure not related to the" Bypass Project.  *Id.* ¶ 37.  To service its

debt to the USDA, the District charges "an annual, front-foot, benefit assessment" on "about 10

properties," including those of Go-Getters and Talon's Village.  *Id.* ¶ 30.

Go-Getters "is a Maryland non-stock, not-for-profit, 501(c)(3) corporation . . . that since

2001 has owned [a] 2.96-acre tract of unimproved land" in the Subdistrict.  ELH-15-3299, ECF 2

¶ 2.  In 2004, Go-Getters asked the District "to allocate water and sewerage service capacity to

_____

[4] According to plaintiffs, a "force main" is "[a] sewer main that uses pumps to exert pressure . . . to move the sewage."  15-3298, ECF 12 at 1 n.1, Motion to Remand; 15-3299, ECF 11 at 1 n.1, Motion to Remand.

[Go-Getters's] property for a proposed, 20 unit, assisted-living facility." *Id.* ¶ 32. Go-Getters asserts that when it requested the allocation of services "the District did not mention that it might impose a benefit assessment based on the allocation request." *Id.* ¶ 33.

"Because of water and sewer capacity problems, the District was unable to approve any allocation to [Go-Getters's] property . . . ." *Id.* ¶ 34. As a result, in December 2004, Go-Getters abandoned plans to build the assisted living facility on its property in the Subdistrict and instead built one elsewhere. *Id.* at ¶¶ 35-36. According to Go-Getters, the District did not approve its requested allocation until 2012, years after Go-Getters had abandoned plans to develop the property. *Id.* ¶ 34; *see id.* ¶ 36. Since Go-Getters has owned the property, it "has never been connected to the water and sewerage systems operated by Defendant or received services from those systems." *Id.* ¶ 2. Go-Getters claims that the District terminated the allocation after Go-Getters refused to pay front-foot benefit assessments. *Id.* ¶ 46.

In 2003, Talon's Village, "a Maryland limited liability company" (ELH-15-3298, ECF 2 ¶ 2), "purchased and began developing" a 6.97-acre parcel of property in the Subdistrict. *Id.* ¶¶ 2-3. According to Talon's Village, when it purchased the property "it anticipated that in order to develop and use the property it would have to pay only the cost of extending a sewer line from its property . . . to an existing gravity sewer main . . . ." *Id.* ¶ 32.[5] In 2003 the District approved Talon's Village's "request for an allocation for water and sewer service," which, as amended, requested service "for 82 two-bedroom residential units." *Id.* ¶ 33. "[I]n two separate phases" (*id.* ¶ 3), which were completed in 2005 and 2008, respectively (*id.* ¶¶ 3A-3B), Talon's Village

---

[5] Plaintiffs explain that a "gravity main" is a sewer main "in which the movement [of sewage] is caused by the downward slope" of the main. ELH-15-3298, ECF 12 at 1 n.1, Motion to Remand; ELH-15-3299, ECF 11 at 1 n.1, Motion to Remand.

constructed "a residential complex known as Talon's Point consisting of 82 townhouse units and

an office . . . ." *Id.* ¶ 3.    At the conclusion of each phase of construction, the units were

connected to the District's existing gravity sewer main, at Talon's Village's expense.   *Id.* ¶¶ 35-

36.

The parties dispute the purpose of the Bypass Project.  Plaintiffs contend that the Bypass

Project was designed to overcome existing inadequacies with the District's sewer system as well

as to accommodate new users, who were expected to increase through future property

development. *See id.* ¶¶ 15-19.  According to plaintiffs, the bypass force main "has the capacity

to handle approximately 3,500,000 gallons per day - almost three times the present flow in the

entire Princess Anne/Westover Subdistrict service area."  Case 1 and Case 2, ECF 2 ¶ 27.

Plaintiffs also assert, *id.* ¶ 26:

> The general public and property owners in the Princess Anne/Westover
> subdistrict have derived substantial benefits from the Bypass Project, including,
> *e.g.*: (a) elimination of discharge into the existing gravity sewerage system from
> [existing pumping stations], which now discharge into the new bypass main; (b)
> replacement of the gravity sewer main in Front Street; (c) reduction/elimination of
> sewage overflows and backups from the gravity system; (d) increase in the overall
> capacity of the sewerage system serving the Princess Anne area; (e) installation of
> 2600 ± feet of new water main running from Somerset Avenue westerly under
> U.S. Route 13 and southerly to Mt. Vernon Road to connect ("loop") existing
> water mains in order to improve the entire water system and enhance public
> safety; and (f) replacement of the Crisfield Lane well.

The District's initial notice concerning "annual debt service" for the Bypass Project was

dated June 1, 2007.  Case 1 and Case 2, ECF 2 ¶ 37.  According to plaintiffs, it did not "state or

suggest that part of the funds to be generated by assessment would be used by the District to pay

for the cost" of the Bypass Project and other infrastructure improvements.  *Id.*

The District contends that the Bypass Project "created an entirely new service area" (Case 1 and Case 2, ECF 7-1 at 3, Motion to Dismiss), which "specially benefitted" (Case 1 and Case 2, ECF 13-1 at 2, Opposition) "approximately ten properties," including those of Go-Getters and Talon's Village. *Id.* at 4.  The District states that it engaged engineering consultants, who recommended undertaking the Bypass Project, "primarily as a result of concerns regarding the capacity of the gravity sewer system serving the Princess Anne subdistrict to accommodate proposed new development . . . ."  Case 1 and Case 2, ECF 7-1 at 2, Motion to Dismiss.  It claims that the initial impetus for hiring engineering consultants who recommended what became the Bypass Project was "in part due to recurrent toilet and sewer backups in the service area . . . ."[6] *Id.*

According to the District, the benefit assessments that it imposes on the plaintiffs are designed "solely to repay the debt [it] incurred to complete the Bypass Project."  Case 1 and Case 2, ECF 13-1 at 2, Opposition.  The District submits that "the benefit assessment is imposed upon limited and definite properties, for the sole purpose of generating revenue that is not subsequently expended for any general/public benefit . . . ."  *Id.*

Between 2008 and 2015, the District charged Go-Getters front-foot benefit assessments totaling $111,252.56, which ranged from $16,722 to $21,876 annually.  ELH-15-3299, ECF 2 ¶ 40.  By letter of February 3, 2014, Go-Getters asked the District "to refund the 2011, 2012 and 2013 benefit assessments it had paid and to abate the 2014 and any future assessments on the ground that the assessments were 'excessive and unconstitutional.'"  *Id.* ¶ 43.  The District denied Go-Getters's request.  *Id.* ¶ 44.  Thereafter, on June 23, 2014, Go-Getters filed an appeal

---

[6] The District asserts that "the problem with toilet and sewer back up was solved by other means."  ELH-15-3298, ECF 7-1 at 2; ELH-15-3299, ECF 7-1 at 2.

to the Maryland Tax Court, "on federal constitutional grounds," challenging "the District's denial of Plaintiff's request for a refund of the 2011, 2012 and 2013 assessments that it had paid. That appeal is pending as Case No. 14-MI-00-0687." *Id.* ¶ 45. This suit followed on September 30, 2015.

Between 2008 and 2015, the District charged Talon's Village front-foot benefit assessments totaling $102,244.22, which ranged from $11,111.09 to $13,891.26 per year. ELH-15-3298, ECF 2 ¶ 41. Talon's Village "paid the benefit charges imposed for 2008, 2009, 2010 and 2011, but has not paid such charges for 2012, 2013, 2014 and 2015." *Id.* ¶ 42. By letter of July 1, 2013, Talon's Village asked the District to refund the 2010 and 2011 front-foot benefit assessments it had paid and "to abate the 2012, 2013 and any future assessments on the ground that the assessments are 'excessive and unconstitutional.'" *Id.* ¶ 44. When the District refused, Talon's Village brought the underlying suit.

Both Go-Getters and Talon's Village seek a declaratory judgment that the District's assessments violate the Takings Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Case 1, ECF 2 at 18-19 ¶¶ A and B; Case 2, ECF 2 at 19 ¶¶ A and B. In addition, they seek an injunction "preventing the District from taking further action to levy or collect benefit assessments . . . ." *Id.* at 19 ¶ C. However, plaintiffs do not seek refunds of past payments of the assessments. *See* Case 1, ECF 2 ¶¶ 58, 65; Case 2, ECF 2 ¶¶ 57, 64.

## II. Discussion

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis . . . ." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005); *see Barbour v. Int'l, Union,* 640 F.3d 599, 617 (4th Cir. 2011) (en banc) (abrogated in

part on other grounds by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. No. 112–63, 125 Stat. 758 (Dec. 7, 2011)) ("[F]ederal courts are courts of limited jurisdiction, [and] should construe removal statutes narrowly, [with] any doubts . . . resolved in favor of state court jurisdiction."). Of import here, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010); *see also Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548 (4th Cir. 2006). Section 1447(c) of 28 U.S.C. provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

The District asserts that this Court possesses subject matter jurisdiction based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331 & 1441(a)-(b). In each Notice of Removal, the District asserts (ELH-15-3298, ECF 1 ¶ 4; ELH-15-3299, ECF 1 ¶ 4):

> Plaintiff[s] allege[] that benefit assessments levied by Defendant constitute a taking of property by monetary exaction pursuant to principles recognized by the United States Supreme Court in *Koontz v. St. Johns River Waterfront Management District*, 133 S. Ct. 2586 (2013) (Count I), constitute a taking of Plaintiffs['] property pursuant to principles recognized by the United States Supreme Court in *Penn Central Transportation v. New York City*, 438 U.S. 104 (1978)(Count II), and constitute an unconstitutional violation of the Equal Protection Clause (Count III).

Under 28 U.S.C. § 1331 federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In turn, 28 U.S.C. § 1441(a) permits "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to be "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." When jurisdiction is based on a claim "arising under the Constitution, laws,

9

or treaties of the United States," 28 U.S.C. § 1331, the case is removable without regard to the citizenship of the parties.  *See* 28 U.S.C. §§ 1441(a)-(b).

Plaintiffs have moved to remand both cases, pursuant to 28 U.S.C. § 1447, claiming that "this Court is barred from exercising jurisdiction by the Tax Injunction Act, 28 U.S.C. § 1341." ELH-15-3298, ECF 12 at 1; ELH-15-3299, ECF 11 at 1.  The District opposes the Motions on the ground that "the benefit assessment[s]" at issue here are "not a 'tax' within the meaning of the Tax Injunction Act . . . ."  Case 1 and Case 2, ECF 13 at 1.  It also argues that plaintiffs are unable to obtain "a plain, speedy and efficient remedy" in Maryland court.  *Id.*, ECF 13-1 at 6-8.

The Tax Injunction Act ("TIA" or the "Act"), 28 U.S.C. § 1341, provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The TIA "is a jurisdictional bar that is not subject to waiver . . . ."  *Folio v. City of Clarksburg, W.Va.*, 134 F.3d 1211, 1214 (4th Cir. 1998).  The Act "represents a recognition that states are best situated to administer their own fiscal operations."  *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 133-34 (4th Cir. 2000) (citing *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976)).  "As such, the term 'tax' is subject to a 'broader' interpretation when reviewed under the aegis of the TIA." *Valero*, 205 F.3d at 134 (quoting *Tramel v. Schrader,* 505 F.2d 1310, 1315 (5th Cir. 1975)). However, "the nomenclature" for the assessment is not controlling; "the inquiry focuses on explicit factual circumstances that transcend the literal meaning of the terminology."  *Valero*, 205 F.3d at 134 (citing *Folio,* 134 F.3d at 1216–17).

The *Valero* Court explained, 205 F.3d at 134: "To determine whether a particular charge is a 'fee' or a 'tax,' the general inquiry is to assess whether the charge is for revenue raising

purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'" (citing *Collins Holding Corp. v. Jasper County,* 123 F.3d 797, 800 (4th Cir. 1997)). The Fourth Circuit explained in *Valero*, 205 F.3d at 134 (citation omitted):

> The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses."

Notably, "courts have developed a three-part test that looks to different factors: (1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Valero*, 205 F.3d at 134. Where a charge "will not fall neatly into either extremity and the characteristics of the charge will tend to place it somewhere in the middle," between a tax and a fee, "the most important factor becomes the purpose behind the statute, or regulation, which imposes the charge." *Id.* "[I]f the ultimate use of the revenue benefits the general public then the charge will qualify as a 'tax,' while if the benefits are more narrowly circumscribed then the charge will more likely qualify as a 'fee.'" *Id.* (citation omitted).

*Brittingham 62, LLC v. Somerset Cty. Sanitary Dist., Inc.,* GLR-12-3104, 2013 WL 398098 (D. Md. Jan. 31, 2013), is instructive. There, Judge Russell considered a substantially identical case and determined that the assessment constituted a tax. Therefore, he remanded that case to the Circuit Court for Somerset County.

In *Brittingham*, between eight and ten property owners within the Subdistrict received a front-foot benefit assessment from the District following the completion of the Bypass Project. One of the property owners challenged the assessments by filing a Petition of Appeal for past

assessment payments in the Maryland Tax Court and a suit in the Circuit Court for Somerset

County challenging, on constitutional grounds, unpaid and future front-foot benefit assessments

as well as seeking reimbursement of past assessment payments.  2013 WL 398098 at *1-2.  The

District removed the State case to federal court, and the plaintiff sought remand, arguing that the

federal court lacked jurisdiction under the TIA.  *Id.* at *1.  Judge Russell concluded that the

District's front-foot benefit assessment constituted a tax for purposes of the TIA.  *Id.* at *5.  In

relevant part, Judge Russell reasoned, *id.* at *4:

> Here, the first prong of the *Valero* test is satisfied in favor of the
> assessments being considered a tax because, as both parties concede, the District
> is performing a legislative function and not simply acting as an administrative
> agency. (*See* Pl.'s Mot. to Remand at 3–4; Def.'s Mot. to Dismiss at 11). The
> dispute, however, arises between the second and third prongs of the test.
>
> Regarding the second *Valero* prong, the District argues the assessments
> are considered a fee because they are only imposed on the eight to ten property
> owners the District has deemed specially benefitted by the completion of the
> Bypass Project. Brittingham counters that regardless of who is actually charged
> the assessment fees, the relevant inquiry is who ought to be charged. Although
> only eight to ten properties currently bear the burden of financing the Bypass
> Project, Brittingham argues the population subject to the charges would be far
> greater if the charges were constitutionally imposed. As it stands, the assessments
> are imposed on the few properties who, prior to the Bypass Project, could not
> receive water and sewer service and are, thus, considered to have specially
> benefitted by the project's completion. (*See* Street Dep. 107:2–18, May 31, 2012,
> ECF No. 13–2). The determination of whether this prong contributes to the
> assessments being deemed a fee or tax, however, is not dispositive of the Court's
> ultimate finding regarding the nature of the assessments.
>
> As previously noted, when the results of the analysis are ambiguous, the
> court places greater weight on the third prong of the *Valero* test, which concerns
> the purposes served by the revenue. *Valero,* 205 F.3d at 134; *see also State of S.C.
> ex rel. Tindal v. Block,* 717 F.2d 874, 887 (4th Cir. 1983); *San Juan Cellular* [*v.
> Pub. Serv. Comm'n of Puerto Rico*]*,* [967 F.2d 683, 685 (1st Cir. 1992)].  At
> bottom, the purpose of the assessment charge is to ameliorate debt incurred by the
> District in financing a project that benefits a substantial segment of the Princess
> Anne community.

* * * *

The current record shows that the existing gravity sewer system in Princess Anne was at or above capacity, and inadequate to meet the needs of the town. The Bypass Project was more cost effective than the replacement of the entire gravity sewer system. The Bypass Project produced manifold benefits: (1) the replacement and upgrade of two pumping stations, (2) rerouting of sewage from the old gravity system through the new force main, (3) the replacement of gravity lines running along Front Street, (4) the reduction and/or elimination of sewage overflows, (5) an overall increase in the capacity of the Princes Anne sewer system, and (6) the installation of over 2,600 feet of new water main. These improvements benefit the general public.

The District askes this Court to reject Judge Russell's analysis and his conclusion that the front-foot benefit assessment constitutes a tax. It points to a subsequent, unpublished opinion issued by the Maryland Court of Special Appeals: *Somerset County Sanitary District, Inc. v. Malone Investments, LLC*, Nos. 0178 & 1029, Sept. Term, 2013 (Jan. 9, 2015). *See* Case 1 and Case 2, ECF 13-2.

In *Malone*, the Maryland Court of Special Appeals considered a case originally brought in the Circuit Court for Somerset County, which is described as "similar" to *Brittingham*.[7] *Malone*, slip op. at 1 n.2. The plaintiff, another property developer within the Subdistrict, had requested sewer service for a proposed development, but the development was not completed. The plaintiff challenged, *inter alia*, the constitutionality of the front-foot benefit assessments that the District had charged it following the completion of the Bypass Project. *Id.* at 1, 6-11. Following a bench trial, the circuit court found, in relevant part, that the District's "assessment method" was "'neither proper nor constitutional.'" *Id.* at 1. In particular, the circuit court concluded that, although "'the Sanitary District conceived of the Bypass Project primarily as a

_____

[7] According to plaintiffs, *Malone* is again on appeal to the Maryland Court of Special Appeals. ELH-15-3298, ECF 16 at 4 n.12; ELH-15-3299, ECF 14 at 8.

means to correct existing [sewer] problems,'" the "'District is attempting to assess the entire costs of the Bypass Project against [Malone's] property, and perhaps certain other undeveloped properties . . . that are neither connected to the system nor abutting on serviced streets.'" *Id.* at 15.

The Maryland Court of Special Appeals concluded, *inter alia*, that the District's benefit assessments did not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 33-47. It also stated, in pertinent part, *id.* at 44:

> [I]t is apparent from the circuit court's opinion that the court held the assessment method unconstitutional in part because it determined that the purpose of the Bypass Project was to alleviate sewer backups, rather than to accommodate new development.[] If that were the underlying premise of the Bypass Project, it is not difficult to understand how assessing a comparatively small group of users for the costs of that project might result in seeming inequity. However, we disagree with the circuit court's conclusion about the purpose of the Bypass Project.

The court concluded that "the purpose of the Bypass Project was not, as the circuit court found, to alleviate sewer backups," but rather to accommodate new development. *Id.* at 47.

In determining whether the plaintiff in *Malone* was entitled to a refund of an assessment that it voluntarily paid in 2008, the Maryland Court of Special Appeals assumed that such an assessment is a tax and a fee, without resolving the issue. *Malone*, slip op. at 29-30. It said, *id.* n.27 (emphasis added):

> We assume without deciding that the assessment constitutes a "tax, fee, charge, interest, or penalty" under the applicable statute, discussed below. *Neither the circuit court's ruling nor the parties' arguments include any discussion of whether the assessment is a tax rather than another type of fee or charge*, instead proceeding under the assumption that the assessment is a tax. Given the constraints of appellate review and the lack of briefing on the subject, *we do not address the matter. . . .*

I am not persuaded that *Malone*'s analysis concerning the constitutionality of the District's assessment contradicts Judge Russell's conclusion that the front-foot benefit assessment constitutes a tax for purposes of the TIA.  As a preliminary matter, Maryland Rule 1-104(a) provides: "An unreported opinion of the . . . Court of Special Appeals is neither precedent within the rule of stare decisis nor persuasive authority."  The District does not explain why this Court should regard *Malone* as persuasive authority when a Maryland court would be barred from doing so.

Even if I were to regard *Malone* as persuasive authority, *Malone* suggests that, at least for some purposes, the front-foot benefit assessment may constitute a tax under Maryland law. [8]  In any event, "[u]nder federal law, it is federal courts, and not state courts, that determine whether a charge is [a] 'tax' or a 'fee' under the TIA."  *Valero*, 205 F.3d at 135 n.5.

In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, ___ U.S. ___, 132 S. Ct. 2566 (2012), the Supreme Court addressed the constitutionality of the individual mandate of the Patient Protection and Affordable Care Act ("ACA").  The ACA imposes a "penalty" on individuals who do not maintain a minimal level of health insurance coverage.  *Id.* at 2594.  But, the ACA's individual mandate is not universal—it applies only to individuals who meet or exceed a minimum income threshold and who do not maintain a minimal level of health insurance coverage.  *Id.*  Chief Justice Roberts identified "the essential feature of any tax," stating that "it produces at least some revenue for the Government."  *Id.*  Moreover, the Supreme Court said that ACA's description of

---

[8] *Cf.* Lauren Kirkwood, *Court: Synagogue must pay 'rain tax'*, The Daily Record, January 28, 2016 at 10A (discussing a recent appeal from a decision of the Baltimore City Board of Municipal and Zoning Appeals to the Circuit Court for Baltimore City, in which the circuit court said, in relevant part, that, in effect, a "stormwater management fee" constitutes a tax).

the payment as a "penalty" rather than a "tax" does not control whether the imposition of the payment falls within Congress's constitutional power to tax. *Id.* at 2594-95.

Although the parties here contest the degree to which the Bypass Project benefited the Subdistrict's sewer customers generally, the parties appear to agree that the District retained consultants to address both future development and existing sewer problems, and they recommended the infrastructure improvements that became the Bypass Project. As Judge Russell noted in *Brittingham*: "The relevant inquiry . . . is not 'solely . . . *where* the money goes, the issue is *why* the money is taken.'" *Brittingham*, 2013 WL 398098, at *4 (quoting *Hager v. City of W. Peoria,* 84 F.3d 865, 870–71 (7th Cir. 1996) (emphasis in original)).

I agree with Judge Russell that the front-foot benefit assessment constitutes a tax for purposes of the TIA. It may well be, as the District contends, that the Bypass Project conferred a particular benefit on a handful of properties and that requiring the owners of those properties to shoulder the cost of the Bypass Project passes constitutional muster. That, however, is a question that goes to the merits of the underlying suit.

As noted, the District also argues that "no Maryland court" can provide the plaintiffs "a plain, speedy and efficient remedy." Case 1 and Case 2, ECF 13-1 at 6; *see also id.* at 3. In particular, the District contends that, "under Maryland law, a benefit assessment is wholly distinct from a tax" and therefore "manifestly outside the jurisdiction of the Tax Court." *Id.* at 8. With respect to Go-Getters, which has filed a claim with the Maryland Tax Court challenging its 2011, 2012 and 2013 assessments, the District contends that Go-Getters's "languorous 'pursuit' of its claims . . . is indicative of the lack of any plain, speedy, and efficient remedy offered by Maryland courts." Case 1, ECF 13-1 at 8. With respect to Talon's Village, which has not filed a

claim with the Maryland Tax Court, the District submits that "even if the Tax Court had jurisdiction over the subject benefit assessment . . . Plaintiff is now time-barred from filing such an action." ELH-15-3298, ECF 13-1 at 6.

Here, plaintiffs do not seek refunds of past assessment payments in these cases. They note that their suits challenge "*unpaid* and *future* assessments" on constitutional grounds— claims that do not fall within the Maryland Tax Court's jurisdiction. ELH-15-3298, ECF 16 at 5 (emphasis in original); ELH-15-3299, ECF 14 at 5 (emphasis in original). Plaintiffs also argue that the Circuit Court for Somerset County, a court of general jurisdiction, is the appropriate forum to resolve these disputes, and that a judgment from the circuit court is reviewable by Maryland appellate courts, as evidenced by *Malone*. *Id.*

As indicated, *Malone* involved an appeal from a suit challenging unpaid and future assessments originally brought in the Circuit Court for Somerset County. The Supreme Court has said: "[A] state-court remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982) (citation and quotation marks omitted). *Malone* demonstrates that Maryland courts provide "a plain, speedy and efficient remedy." *See id.*

In addition, Go-Getters maintains that the Maryland Tax Court has jurisdiction over its claim for refund of paid assessments. Case 1, ECF 14 at 5-7, Reply. It also contends that its Maryland Tax Court case is not languishing and, in any event, does not seek to resolve its constitutional claims concerning unpaid and future assessments. *See id.* 4-9.

17

Under Maryland law, a claimant may file for a tax refund when the "tax, fee, charge, interest, or penalty . . . is erroneously, illegally, or wrongfully assessed or collected in any manner."   Md. Code (2013 Repl. Vol., 2015 Supp.), § 20-113 of the Local Gov't Article ("L.G.").   If the refund is denied, the claimant may seek relief from the Maryland Tax Court. *See* L.G. § 20-117.   Decisions of the Maryland Tax Court are appealable to the circuit court, a court of general jurisdiction.  *See* Md. Code (2010 Repl. Vol., 2015 Supp.), § 13-532(a)(2) of the Tax General Article; Md. Code (2013 Repl. Vol., 2015 Supp.) § 1-501 of the Courts & Judicial Proceedings Article.  From there, the parties have a right to seek review in the Maryland Court of Special Appeals.  Md. Code (2014 Repl. Vol., 2015 Supp.), § 10-223(b)(1) of the State Gov't Article.   And, the parties may seek certiorari to the Maryland Court of Appeals.  *See* Maryland Rule 8-301(a) (as amended by 2015 Maryland Court Order 0004).

Other judges of this Court have also concluded that a Maryland judicial procedure that permits plaintiffs to raise constitutional challenges to taxes and appeal judgments to Maryland appellate courts provides "a plain, speedy and efficient remedy" for purposes of the TIA.  *See*, *e.g.*, *Brittingham*, 2013 WL 398098, at \*5-6; *Antosh v. City of Coll. Park*, 341 F. Supp. 2d 565, 569 (D. Md. 2004) ("If the requested refund is denied, as was the case with the plaintiffs' request, the claimant may appeal the denial to the Maryland Tax Court.   Md. Code, Art. 24 § 9– 712(d)(1). After the Tax Court has issued its decision, a claimant may seek judicial review in the Circuit Court and, beyond that, to the Court of Special Appeals.  Md. Code [Tax - General] § 13– 532(a); Md. Code [State Government] § 10–223(b)(1). This state court remedy meets the procedural criteria required by the 'plain, speedy, and efficient' provision in the TIA.")

Nevertheless, as indicated, plaintiffs do not seek a tax refund in these cases. As plaintiffs note, the District does not explain why Maryland courts fail to offer a "plain, speedy and efficient remedy" to "challenge *unpaid* and *future* assessments" by way of a suit in a state court of general jurisdiction. ELH-15-3298, ECF 16 at 5 (emphasis in original); ELH-15-3299, ECF 14 at 5 (emphasis in original). The District's reliance on *Malone*, an appellate case reviewing a constitutional challenge to unpaid and future assessments, originally brought in the Circuit Court for Somerset County, is in tension with its contention that Maryland courts do not afford plaintiffs "a plain, speedy and efficient remedy."

### III. Conclusion

I am persuaded that, for purposes of the TIA, the District's front-foot benefit assessments constitute a tax and that Maryland courts provide "a plain, speedy and efficient remedy." Therefore, I conclude that this Court lacks jurisdiction under the Act and that remand is necessary. Accordingly, plaintiffs' Motions are granted.

Separate orders follow, consistent with this Memorandum Opinion.


Date:   January 28, 2016                        _____/s/_____

                                                Ellen Lipton Hollander
                                                United States District Judge